*E-Filed: August 20, 2014*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>     v.<br><br>JIM APPLEGATE, ET AL.,<br><br>          Defendants.<br>_____/ | No. C13-04495 HRL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re: Docket No. 39] |

Liberty Mutual Insurance Company ("Liberty") sues eight individuals and three companies[1] ("Defendants") for breach of contract, specific performance, and related claims arising from Defendants' failure to indemnify Liberty for losses and/or deposit collateral in connection with various surety bonds issued for the benefit of Applegate Johnston, Inc. ("AJI"). Liberty moves for partial summary judgment as to Defendants' liability to indemnify Liberty for known losses and to post collateral to cover future losses. Defendants do not dispute their liability under the agreement; they only dispute the amount of damages and request further discovery before damages are awarded. At the hearing on May 6, 2014, the Court ordered Liberty to provide additional documentation supporting its alleged current and estimated future damages. The Court also gave Defendants an opportunity to oppose Liberty's supplemental submissions as well as to provide additional argument as to why a partial damages award was procedurally improper. The parties have expressly

---

[1] Defendants are Jim, Heather, Richard, and Shannon Applegate; John and Monica Bergman; Rebecca and Timothy Johnston; JABA Investments LLC; Old Growth Properties LLC; and 233 Tully Road LLC.

consented to having all matters decided by the undersigned. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Upon consideration of the moving and responding papers, the arguments of counsel at the hearing, and the parties' post-hearing submissions, the Court GRANTS Liberty's motion for partial summary judgment.

## BACKGROUND[2]

Defendants and Liberty executed an Indemnity Agreement ("Agreement") whereby Defendants and AJI agreed to indemnify Liberty for all losses sustained in connection with Liberty's issuing of any bonds on behalf Defendants and/or AJI. Under the Agreement, Liberty may charge the indemnitors for reimbursement for any payments Liberty makes in good faith in connection with the bonds. "[V]ouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety." Agreement at 2, Decl. of Christine Bartholdt, Exhibit A, Dkt. No. 39-1. The Agreement also provides that the indemnitors must deposit collateral on demand by Liberty, in an amount to be determined by Liberty, for anticipated losses, even if no losses have yet been sustained.

Liberty furnished subcontract payment and performance bonds for various construction projects, including the San Jose Environmental Innovation Center Project ("SJ Project"), as well as numerous stop notice release bonds (collectively, "Bonds"), on behalf of AJI. Between March 2012 and March 2013, numerous subcontractors and suppliers on the projects asserted that AJI failed to pay, and the City of San Jose ("City") received at least twenty-four stop notice claims totaling over $2 million. In July 2013, AJI notified Liberty that it had defaulted on the contract for the SJ Project, and AJI acknowledged its obligations under the indemnity agreement. In August, Liberty advised Defendants of AJI's default and demanded that Defendants deposit collateral of $7 million pursuant to the Agreement.

In September, pursuant to its obligations on the SJ Project bonds, Liberty entered into a takeover agreement with the City under which it arranged for RJT Construction ("RJT") to consult and complete construction on the project. Liberty directed RJT to prepare an estimated budget of the cost to complete the project. Based in part on that estimate, Quantum Financial Consulting,

---

[2] The following facts are undisputed, unless otherwise noted.

2

LLC ("Quantum") projected the total anticipated losses, costs and expenses as of September 30, 2013, to be $7,561,092.00. Liberty also directed RJT review and analyze the validity of each of the payment bond claims and stop notice claims filed on the SJ Project. Relying on the recommendations of RJT, Liberty denied or settled the claims.

According to Liberty, its losses arising out of its performance to complete the project and its payment to claimants on the bonds totaled $2,693,891.88 as of March 4, 2014. Liberty also claims to have incurred expenses in the amount of $755,729.83, for a total of $3,449,662.71. In support of these figures, Liberty's Surety Claims Counsel Christine Bartholdt attached an accounting to her declaration detailing payments received from the City of San Jose, expenses paid, payments to claimants, and payments to RJT for performance. *See* Supp. Decl. Christine Bartholdt, Exhibit C, Dkt. No. 52-3. Liberty moves for an award of damages in the amount of $3,449,662.71, as well as a collateral deposit of $4,111,469.29, which amount represents the September 2013 estimate less the requested damages.

As an initial matter, Defendants assert that there is no legal authority allowing a plaintiff to move for summary judgment on a portion of its damages and seek specific performance to deposit collateral for the remainder. Defendants also assert that Liberty has failed to account for various payments and credits made by San Jose. Accordingly, Defendants argue that the amount of damages is in genuine dispute, or alternatively that the Court should defer ruling on summary judgment until the parties have engaged in sufficient discovery.

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough

3

evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *See Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Id.*

### DISCUSSION

As an initial matter, the Court rejects Defendants argument that Liberty's motion seeking part damages and part specific performance is procedurally improper. Federal Rule of Civil Procedure 56(a) expressly allows a party to move for summary judgment on a "part of [a] claim or defense," and multiple district courts in the Ninth Circuit have ordered damages for current losses and specific performance of collateral security provisions for anticipated losses in similar cases involving sureties. *See Ins. Co. of the West v. Kuenzi Commc'ns., LLC*, No. 09-6102-AA, 2009 WL 2731349 (D. Or. Aug. 26, 2009) (granting summary judgment on claim for damages and specific performance of collateral security); *Hartford Fire Ins. Co. v. Univ. Import, LLC*, No. 3:08-cv-00271-LRH-RAM, 2009 WL 4042699 (D. Nev. Nov. 20, 2009) (ordering defendant to indemnify plaintiff surety for $50,000 already paid as well as specific performance of the collateral security provision by posting an additional $50,000 for an anticipated payment). On the other hand, Defendants have offered no authority for their position that a plaintiff must wait until all its losses are liquidated before moving for summary judgment. Accordingly, the Court will consider

4

1  Liberty's request for current damages as well as specific enforcement of the collateral security
2  provision to cover anticipated losses.

    A. Damages

"In the event of any payment by the Surety, the Indemnitors . . . agree that in any accounting between the Surety and [the Indemnitors] . . . the Surety shall be entitled to charge for any and all disbursements made by it in good faith . . . and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety." Agreement at 2.

Here, Liberty has produced such an accounting detailing each payment received by the City of San Jose, each expense incurred, each payment made to a claimant, and each payment made to RJT for performance on the San Jose Project, indicating that Defendants are liable for total of $3,449,621.71. Moreover, it provided a copy of the cancelled check for each transaction. Accordingly, Liberty has satisfied its initial burden to demonstrate that Defendants are liable for those losses.

Defendants assert that Liberty has failed to incorporate payments it received from the City of San Jose into its damages calculation. First, Defendants merely refer to the attached Takeover Agreement and generally suggest that "[a]s the Court can see, [the agreement] has provisions regarding payments and credits to plaintiff that are not addressed in plaintiff's moving papers." Second Supp. Struck Decl. at ¶ 15. However, Defendants fail to identify a specific payment or credit that Liberty failed to address, and on the contrary, the Court can see that Liberty did include the payments described in paragraphs four, five, and six of the Takeover Agreement. In any case, Defendants fail to explain why any unidentified payment or credit should offset the amount Defendants owe Liberty for the payments it undisputedly made in good faith. Additionally, in a late-filed supplement, Defendants attempt to raise a genuine dispute with a March 31, 2014 payment application and wire transfer confirmation which indicates that the City of San Jose has paid Liberty over $12 million, which Defendants believe has not been accounted for in Liberty's papers. Liberty objects to the late-filed submission but notes that, as evidenced by the Takeover Agreement, over $8 million of that money was actually paid to AJI, not to Liberty. Again, Defendants merely refer to a

document generally without identifying a specific payment or explaining its relevance. Such vague references to unaccounted for payments are insufficient to raise a genuine dispute of material fact. Accordingly, Liberty is entitled to summary judgment as to Defendants' liability for damages in the amount of $3,449,622.71. *See Continental Cas. Co. v. American Sec. Corp.*, 443 F.2d 649, 650-51 (finding affidavit from officer of surety company and supporting documentation, including itemized list of claims and cancelled checks, was sufficient to support summary judgment where opposing party did not attempt to contradict any single claim of payment).

B. Specific Performance

"If the Surety determines, in its sole judgment, that potential liability exists . . . the Indemnitors . . . shall deposit with the Surety, promptly upon demand, a sum of money equal to an amount determined by the Surety or collateral security of a type and value satisfactory to the Surety, to cover that liability." Agreement at 1.

Liberty hired RJT's constructing consulting services to determine the cost of completion of the SJ Project. Based in part on this estimate, Quantum estimated Liberty's total anticipated losses, costs and expenses as of September 30, 2013 to be $7,561,092.00. Liberty requests specific performance of the collateral security provision requiring Defendants to deposit collateral in this amount, less the damages award above, for a total of $4,111,469.29. Based on the supporting declarations of Rod Tompkins, Sr., president, owner and qualified managing officer of RJT, as well as Mary Lyynn Kotansky, formerly sole proprietor of Quantum, Liberty produced sufficient evidence demonstrating that it reasonably determined that potential liability existed such that Defendants were required to deposit collateral upon demand pursuant to the agreement.

Defendants do not make any specific arguments in opposition to Liberty's request for specific performance of the collateral security provision. Accordingly, they have not raised a genuine dispute of material fact, and Liberty is entitled to summary judgment on its claim for specific performance.

6

## CONCLUSION

Liberty is awarded damages in the amount of $3,449,729.83, and Defendants shall deposit collateral in the amount of $4,111,469.29. Accordingly, Liberty's motion for partial summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: August 20, 2014

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C14-04495 HRL** N**otice will be electronically mailed to:**

Amanda Leighann Marutzky     amarutzk@wthf.com, jjensen@wthf.com

Andrew Joel Van Ornum     avanornu@vlmglaw.com, ckeats@vlmglaw.com, rverducc@vlmglaw.com

James Dale Struck     jim@thestruckfirm.com, lissette@thestruckfirm.com

Robert Curtis Niesley , Esq     rniesley@WTHF.com, aoremus@WTHF.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**